UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD ARTHUR KIRKHAM, | CASE NO. 2:24-cv-01625-DGE-SKV |
| Plaintiff, | |
| v. | ORDER ADOPTING IN PART AND DENYING IN PART THE REPORT AND RECOMMENDATION (DKT. NO. 67) |
| CITY OF BELLINGHAM et al., | |
| Defendants. | |

Before the Court are Plaintiff's objections (Dkt. No. 68) to the Report and

Recommendation ("R&R") of United States Magistrate Judge S. Kate Vaughan (Dkt. No. 67),

which recommends granting in part Defendants' motion to dismiss and staying certain claims

under *Younger v. Harris*, 401 U.S. 37 (1971).  For the reasons that follow, the Court ADOPTS in

part and DENIES in part the R&R.

ORDER ADOPTING IN PART AND DENYING IN PART THE REPORT AND RECOMMENDATION (DKT. NO. 67) - 1

# I    BACKGROUND

The Court refers to the R&R for a more comprehensive recitation of the facts.[1]  (Dkt. No. 67 at 2–10.)  To summarize, on March 13, 2023, Bellingham Municipal Court issued a domestic violence no-contact order against Plaintiff listing Plaintiff's wife, R.K., as the protected party.  (*Id.* at 2; Dkt. No. 38 at 6.)  On March 22, 2023, R.K. called 911 from her and Plaintiff's home claiming Plaintiff assaulted her by choking her unconscious.  (Dkt. No. 38 at 6.)  Plaintiff alleges numerous Bellingham Police Department ("BPD") officers responded "and determined that [R.K.] has not been assaulted."  (*Id.* (citing Dkt. No. 38-1 at 35).)

On June 26, 2023, "numerous BPD Officers deployed to the Plaintiff's home hoping to locate him and arrest him on nonviolent warrants."  (Dkt. No. 38 at 6.)  Officers conducted a threat assessment to determine if a Special Weapons and Tactics ("SWAT") team's participation was warranted.  (*Id.* at 7.)  The initial assessment found it was not.  (*Id.*)  Plaintiff alleges officers altered the threat assessment without explanation.  (*Id.*)  However, the exhibits he relies upon explain officers became aware that Plaintiff's three prior convictions had been inadvertently omitted from the analysis.[2]  (*Id.*; Dkt. No. 38-1 at 5.)  The threat assessment indicated a

---

[1] Plaintiff argues the R&R omits or misrepresents "important facts" relevant to Plaintiff's claims because the R&R does not describe the "reasonable inferences" that must be taken from the alleged facts.  (Dkt. No. 68 at 2–6.)  For purposes of the motion to dismiss, the Court accepts Plaintiff's factual allegations as true but does not accept the conclusions or inferences Plaintiff believes must follow the factual allegations.  "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–755 (9th Cir. 1994) (citations omitted).  The Court concludes the "facts" omitted from the R&R's background information are merely Plaintiff's legal argument or conclusions.

[2] In his objections, Plaintiff argues the reports are "ambiguous[,]" and "clearly falsified upon reasoned review" because officers added an additional nine points to the threat assessment without explanation.  (Dkt. No. 68 at 2.)  The Court need not decide whether the proper threat assessment was 21 or 30 because an assessment score between 17 to 24 requires officers to consult a SWAT commander.  (*See* Dkt. No. 38-1 at 18.)

ORDER ADOPTING IN PART AND DENYING IN PART THE REPORT AND RECOMMENDATION (DKT. NO. 67) - 2

mandatory SWAT consultation.  (*See* Dkt. No. 38-1 at 18.)  However, SWAT was not activated because it was determined that Plaintiff posed no apparent threat to the community at that time. (*Id.* at 5.)

On July 20, 2023, Plaintiff was arrested on unspecified charges.  (Dkt. No. 38 at 9.) Plaintiff alleges an officer "called the Whatcom County Prosecutor . . . and requested a 'SWAT callout' to arrest Plaintiff," and the prosecutor "told [the officer] that it would be better to have the Plaintiff dealt with when he showed up to court the next day."  (*Id.*)

On September 27, 2023, R.K. "again alleged to BPD that the Plaintiff assaulted her by choking her unconscious[,]" and alleged that Plaintiff was going to cut his GPS ankle monitor off.  (*Id.* at 11.)  Plaintiff alleges officers did not verify R.K.'s injuries., and they later learned that Plaintiff had not in fact cut his GPS ankle monitor.  (*Id.*)

On September 28, 2023, Plaintiff was charged with felony violation of the no-contact order and a warrant for his arrest was issued.  (*See* Dkt. No. 38-1 at 31-33.)  Between March 2023 and September 2023, Plaintiff was arrested at least six times, and at some point amidst those interactions, Plaintiff alleges that the City Defendants[3] entered into and advanced a conspiracy to unreasonably and unnecessarily activate SWAT against him.  (Dkt. No. 67 at 4.)

Plaintiff alleges that "[a]lmost every BPD Officer involved in the September 28, 2023, incident claimed they were familiar with the Plaintiff's criminal history."  (Dkt. No. 38 at 13.) On the morning of September 28, 2023, Plaintiff was parked in his motorhome in the Silver Reef Casino parking lot, where he had stayed overnight.  (*Id.* at 12.)  Plaintiff asserts the police

---

[3] Defendants City of Bellingham, Rebecca Mertzig, Donald Almer, Jeremy Harper, Shaun Nelson, Luke Haas, Jeremy Woodward, Kaige Edgar, Nicolas Sturlaugson, Steven Longbottom, Dhillon Jobandeep, Avery Lyons, Kevin Bean, David Johnson, Michael Shannon and Lisa Aspessi are collectively referred to as the "City Defendants."

ORDER ADOPTING IN PART AND DENYING IN PART THE REPORT AND RECOMMENDATION (DKT. NO. 67) - 3

surveilled him there for several hours, and declined to arrest him at that location because they did not want casino cameras to capture the arrest and because arresting him while he was located inside his motorhome would not enable them to deploy a SWAT team. (*Id.* at 12–13.)

Defendant Detective Lisa Aspessi requested a rush warrant for Plaintiff's arrest at approximately 10:45 a.m. (*See id.* at 11; Dkt. No. 38-1 at 29.) After consulting with SWAT, the decision was made to deploy SWAT to effectuate Plaintiff's arrest. (*See* Dkt. No. 38 at 12–13.)

Plaintiff departed the casino parking lot and drove his motorhome to his house, while police continued to surveille him. (*See id.* at 12, 14.) Plaintiff alleges that BPD allowed him to drive home before arresting him so that the following factors would be present to justify SWAT deployment: Plaintiff's familiarity with the structure; risk that Plaintiff would barricade himself in the structure; belief that Plaintiff has access to firearms; the surrounding area which was linked by vehicle thoroughfares; Plaintiff's tactical advantage over responding officers; Plaintiff's knowledge and line of sight to innocent bystanders; and a potential armed hostage situation because officers did not know R.K.'s whereabouts. (*Id.* at 14.) Plaintiff contends these factors were not present while he was in the casino parking lot, and the fact that Defendants allowed Plaintiff to drive home then claim factors warranting SWAT deployment proved their conspiracy against him. (*Id.* at 14–15.)

Plaintiff alleges that in furtherance of the conspiracy, officers planned to: not identify the SWAT team as police; not tell Plaintiff he was under arrest; not issue lawful commands to Plaintiff; startle Plaintiff by blipping a police siren to induce a flight response; immediately open fire without warning; deploy a K9 officer without warning; commit violence and criminal assault against Plaintiff; alter their body-worn camera footage as necessary to cover their excessive force; and submit false reports to support the altered camera footage. (*Id.* at 15.)

ORDER ADOPTING IN PART AND DENYING IN PART THE REPORT AND RECOMMENDATION (DKT. NO. 67) - 4

BPD officers arrived at Plaintiff's home and arrested him between 1:45 p.m. and 2:00 p.m. (Dkt. No. 67 at 7.)  Plaintiff alleges officers did not identify themselves and instead used a siren to induce him to run away to support the use of force. (*Id.* at 16–18.)  Within three seconds of running, Plaintiff collided with an officer at his backyard gate, saw "Police" emblazoned on the officer's uniform, and stopped attempting to run or resist. (*Id.* at 19.)  Plaintiff contends three officers grabbed hold of him and walked him into the backyard, out of public view, where they proceeded to allow a K9 dog attack him. (*Id.* at 20.)  After 20 to 30 seconds, the officers removed the K9 and handcuffed Plaintiff. (*Id.*)

As officers walked Plaintiff out of his backyard, Plaintiff alleges he loudly told other officers he had been assaulted. (*Id.*)  Plaintiff contends an officer kept cutting him off and refused to make a written report. (*Id.* at 21.)  Plaintiff was subsequently transferred to a hospital for treatment, and asked a nurse to send a social worker so he could report the assault. (*Id.*)  When a social worker approached to speak with Plaintiff, Plaintiff alleges that a police officer turned her away. (*Id.* at 22.)

Plaintiff states he later viewed the body-worn camera footage of his arrest, and alleges the footage was authentic and supported his factual assertions up until it shows officers running with the K9 on the leash. (*Id.* at 15–26.)  After that point, the footage was allegedly replaced with computer-generated footage. (*Id.* at 26.)  Plaintiff further alleges that officers falsified portions of their reports to support the version of events portrayed in the altered footage. (*Id.*)

Plaintiff filed this lawsuit on October 29, 2024, and amended his complaint on July 17, 2025. (Dkt. Nos. 4, 38.)  He brings claims of (1) Fourth Amendment excessive force, (2) *Monell* liability against the City of Bellingham and Bellingham Police Department, (3) First Amendment redress of grievances, and (4) Fourteenth Amendment equal protection and due process under 42

ORDER ADOPTING IN PART AND DENYING IN PART THE REPORT AND RECOMMENDATION (DKT. NO. 67) - 5

U.S.C. §§ 1983 and 1985.  He also alleges state law claims for outrage, willful neglect, breach of duty, assault, battery, deliberate indifference, intentional infliction of emotional distress, failure to supervise, and negligence.  (Dkt. No. 38 at 28–32.)  Defendants moved to dismiss the entirety of the complaint.  (Dkt. No. 49.)  Plaintiff opposed the motion.  (Dkt. No. 58.)

On November 24, 2025, Judge Vaughan issued an R&R, recommending Defendants' motion to dismiss be granted in part, and Plaintiff's § 1983 claims and state tort claims be stayed under *Younger* pending resolution of his related state criminal cases.  (Dkt. No. 67 at 24–25.)  Plaintiff filed objections to numerous background facts recited in the R&R and further objects to the recommendations that (1) Plaintiff's allegations do not give rise to a stand-alone First Amendment claim, (2) the R&R failed to recognize his *Monell* claim, and (3) Plaintiff offered only conclusory allegations to support his conspiracy claims.  (Dkt. No. 68 at 2–12.)  Plaintiff also requests that discovery proceed during the pendency of the stay.  (*Id.* at 12.)  Defendants responded in support of the R&R.  (Dkt. No. 68.)

## II   STANDARD OF REVIEW

### A.  Review of R&Rs

A district court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which [an] objection is made."  28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition *that has been properly objected to*.") (emphasis added).

Objections to an R&R must be "specific."  Fed. R. Civ. P. 72(b)(2).  "[M]ere incorporat[ion]" of arguments from the underlying motions, without identifying "what portions of the R&R" the objecting party "considers to be incorrect," does not constitute a specific objection, *Amaro v. Ryan*, No. 10-CV-48-TUC-RCC, 2012 WL 12702, at *1 (D. Ariz. Jan. 4,

ORDER ADOPTING IN PART AND DENYING IN PART THE REPORT AND RECOMMENDATION (DKT. NO. 67) - 6

2012), and therefore does not give rise to a court's obligation to conduct a *de novo* review, *Brandon v. Dep't of Corr.*, No. C21-5417-JCC, 2021 WL 5937685, at *1 (W.D. Wash. Dec. 16, 2021). "In the absence of a specific objection, the [C]ourt need only satisfy itself that there is no 'clear error' on the face of the record before adopting the magistrate judge's recommendation." *Venson v. Jackson*, No. 18-CV-02278-BAS-BLM, 2019 WL 1531271, at *1 (S.D. Cal. April 8, 2019).

### B. Motion to Dismiss

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Analysis under Federal Rule of Civil Procedure 12(c), like analysis under Federal Rule of Civil Procedure 12(b), requires "a court [to] determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Brooks v. Dunlop Mfg. Inc.*, No. C 10-04341 CRB, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011)) (internal quotation marks omitted).

Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). Material allegations are taken as admitted and the complaint is liberally construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

ORDER ADOPTING IN PART AND DENYING IN PART THE REPORT AND RECOMMENDATION (DKT. NO. 67) - 7

and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted). The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

Additionally, complaints filed *pro se* are "'to be liberally construed'"; "'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ("*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment of *pro se* filings; accordingly, we continue to construe *pro se* filings liberally when evaluating them under *Iqbal*.").

### III    DISCUSSION

Judge Vaughan recommends granting in part Defendants' motion to dismiss. (Dkt. No. 67.) The Court reviews *de novo* (1) whether Plaintiff's First Amendment claim is separate from his civil conspiracy claim, (2) whether Plaintiff raised a municipal liability claim against BPD, (3) whether Plaintiff provided conclusory allegations as to his civil conspiracy claims, and (4) whether discovery should proceed in light of a stay under *Younger*.

### A. First Amendment Claim

Judge Vaughan recommends Plaintiff's allegations did not "rise to a stand-alone First Amendment claim but instead [fell] squarely within his coverup conspiracy claim." (Dkt. No. 67

ORDER ADOPTING IN PART AND DENYING IN PART THE REPORT AND RECOMMENDATION (DKT. NO. 67) - 8

at 14.)  Plaintiff argues Defendants intentionally interfered with his right to report the alleged crimes committed against him, and this inference is "distinct from the conspiracy to cover up." (Dkt. No. 68 at 7–8.)

According to the complaint, Defendant Almer "kept cutting [Plaintiff] off to avoid statements which would incriminate his Officers from being recorded by his [body-worn camera], as part of the secondary conspiracy to interfere with and obstruct the Plaintiff's First and Fourteenth Amendment rights[,]" and "intentionally left the Plaintiff's allegations against his Officers out [of] his report, in furtherance of the secondary conspiracy[;]" and Defendant Johnson turned a social worker away "without letting the Plaintiff speak with her, fulfilling his part in the secondary conspiracy." (Dkt. No. 38 at 21–22.)  Plaintiff's own recitation of the facts describe Almer and Johnson's actions as part of a civil conspiracy.  Thus, the Court can see why Judge Vaughan determined Plaintiff's allegations fell "squarely within his coverup conspiracy claim." (Dkt. No. 67 at 14.)

But, at this stage, the Court will view the allegations in the light most favorable to Plaintiff.  Plaintiff, arguably, asserts that his First Amendment right to "petition the government for a redress of grievances" was interfered with.  (*See* Dkt. No. 68 at 7.)  Plaintiff asserts Almer "interfered with Plaintiff's attempts to declare the criminal actions of his Officers; Almer refused to take a written report from Plaintiff." (Dkt. No. 38 at 21.)  Plaintiff further alleges such actions "violated his First Amendment right to seek redress of his grievances." (*Id*. at 30.)  Notably, Defendants' motion to dismiss did not analyze this potential First Amendment.  (*See* Dkt. No. 49 at 4 n.4) (Plaintiff "does not appear to allege any claims under these Amendments that are not duplicative of his excessive force allegations under the Fourth Amendment.  As such, Defendants only interpret such claims to be Fourth Amendment claims under § 1983.").  It may

ORDER ADOPTING IN PART AND DENYING IN PART THE REPORT AND RECOMMENDATION (DKT. NO. 67) - 9

be that these allegations do not in fact support a cognizable First Amendment claim, but because the motion to dismiss did not address this potential claim, the Court is unable to make any determination as to whether this claim is cognizable. For now, the Court will allow an independent First Amendment claim to survive, but as with the other claims found to have survived, the First Amendment claim will be STAYED pending resolution of Plaintiff's related state criminal case.

### B. *Monell* Claim

The R&R concluded that Plaintiff's complaint "boiled down to § 1983 and civil conspiracy claims, premised on alleged Fourth Amendment violations, plus state law tort claims seeking relief for the same conduct." (Dkt. No. 67 at 16.) Plaintiff argues he sufficiently pled causes of actions under *Monell* and requests the Court recognize this cause of action. (Dkt. No. 68 at 8.)

To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must allege: (1) they possessed a constitutional right to which they were deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40, Cnty. of Yamhill,* 130 F.3d 432, 438 (9th Cir. 1997). Construing Plaintiff's *pro se* complaint liberally, the Court finds Plaintiff has alleged *Monell* claims against the City of Bellingham under the Fourth Amendment. However, the R&R recommends that Plaintiff's Fourth Amendment claims for monetary damages be stayed pending resolution of his related state criminal cases. (Dkt. No. 67 at 24.) Because the Court is unable to resolve whether Plaintiff was deprived of his Fourth Amendment constitutional right without running afoul of

ORDER ADOPTING IN PART AND DENYING IN PART THE REPORT AND RECOMMENDATION (DKT. NO. 67) - 10

*Younger*, the Court STAYS Plaintiff's *Monell* claim pending resolution of his related state criminal case.

### C. Civil Conspiracy Claim

Judge Vaughn recommends dismissing Plaintiff's conspiracy claims because they "hinge on conclusory allegations." (Dkt. No. 67 at 18.)

To state a claim for civil conspiracy under Washington law, a plaintiff must demonstrate that "(1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy." *All Star Gas, Inc.*, *of Wash. v. Bechard*, 998 P.2d 367, 372 (Wash. Ct. App. 2000). "Mere suspicion . . . is insufficient to prove a conspiracy." *Wilson v. State,* 929 P.2d 448, 459 (Wash. Ct. App. 1996). "Where the facts and circumstances relied upon to establish a conspiracy are as consistent with a lawful or honest purpose as with an unlawful undertaking, they are insufficient." *Lewis Pacific Dairymen's Ass'n v. Turner,* 314 P.2d 625, 631 (Wash. 1957).

SWAT Deployment Conspiracy

Plaintiff argues Defendants engaged in a conspiracy to deploy SWAT to violate his Fourth Amendment rights. (*See* Dkt. No. 38 at 28.)

Plaintiff contends Defendants conspired to arrest him at his home, as opposed to in the casino parking lot, because factors justifying SWAT deployment existed at his home. (*See id.* at 13–15.) Plaintiff agrees Defendants had a warrant for his arrest on September 28, 2023. (*Id.* at 11.) Thus, Defendants attempted to accomplish a lawful purpose when they arrived at Plaintiff's home. Plaintiff fails to articulate why it was unlawful for BPD officers to arrest him in a

ORDER ADOPTING IN PART AND DENYING IN PART THE REPORT AND RECOMMENDATION (DKT. NO. 67) - 11

location different from one he deemed preferable, nor does he cite any authority in support of this theory.

Therefore, Plaintiff fails to meet the first prong for proving a civil conspiracy as to the SWAT deployment conspiracy.

Coverup Conspiracy

Judge Vaughan concluded Plaintiff allegations regarding the coverup conspiracy do not meet the plausibility threshold.  (Dkt. No. 67 at 18.)

Rule 8 requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To meet this requirement, the Supreme Court has held that an entitlement to relief requires "more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above a speculative level[.]"  *Twombly,* 550 U.S. at 555 (citations omitted).  Although "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable," plaintiffs must include sufficient "factual enhancement" to cross "the line between possibility and plausibility[.]"  *Id.* at 556–557.

Establishing the plausibility of a complaint's allegations is a two-step process that is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal,* 556 U.S. at 679.  First, a court should "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.*  Then, a court should "assume the[ ] veracity" of "well pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement to relief."  *Id.*  When considering plausibility, courts must also consider an "'obvious alternative explanation'" for defendant's behavior.  *Id.* at 682 (quoting *Twombly,* 550 U.S. at 567).  "When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations

ORDER ADOPTING IN PART AND DENYING IN PART THE REPORT AND RECOMMENDATION (DKT. NO. 67) - 12

that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (internal quotations and citations omitted).

Plaintiff alleges Defendants conspired to alter officers' body-worn camera footage and reports "to avoid accountability for their criminal actions and in support of the conspiracies" described in Plaintiff's first amended complaint. (Dkt. No. 38 at 26.) However, Plaintiff contends that while portions of the body-worn camera footage were "fake[,]" "the fabricated portions still unquestionably prove excessive force" by Defendants." (*Id.*) As noted by Judge Vaughan, it is not plausible that Defendants conspired to cover up use of excessive force by swapping one version of excessive force with another. Because Plaintiff fails to state a claim, his civil conspiracy claims are DISMISSED without prejudice.[4]

**D. Discovery During Pendency of Stay**

Judge Vaughan recommends Plaintiff's Fourth Amendment claims and state tort claims be stayed pending resolution of his related state criminal cases. (Dkt. No. 67 at 24.) Plaintiff does not object to the stay, but instead requests that discovery proceed during the stay. (Dkt. No. 68 at 12.) Plaintiff contends staying discovery would "complicate and potentially completely prevent Plaintiff from being able to secure his expert and examine the [body-worn camera]

---

[4] The remainder of Plaintiff's objections regarding the civil conspiracy claims amount to a disagreement over the R&R's analysis of his allegations. (*See* Dkt. No. 68 at 10–12.) *See Brown v. Papa Murphy's Holdings Inc.*, No. C19-5514 BHS-JRC, 2021 WL 1574446, at *3 (W.D. Wash. April 22, 2021) ("objections to a R&R are not a vehicle to relitigate the same arguments carefully considered and rejected by the Magistrate Judge"). The Court declines to address these attempts to relitigate Judge Vaughan's analysis.

ORDER ADOPTING IN PART AND DENYING IN PART THE REPORT AND RECOMMENDATION (DKT. NO. 67) - 13

footage," and he would be prejudiced by Defendants' possession of relevant documents during the stay, as Defendants could "develop their litigation strategies" or destroy evidence. (*Id.* at 12–13.)

*Younger* prevents a federal court from directly interfering with ongoing criminal proceedings in state court. *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 669 (9th Cir. 2004). The case here directly implicates "the States' interest in administering their criminal justice systems free from federal interference[.]" *See Kelly v. Robinson*, 479 U.S. 36, 49 (1986). Any discovery done in this case will affect—and could even circumvent—the discovery limitations a defendant faces in a state criminal action. Plaintiff's conclusory allegations that he will be prejudiced by Defendants' possession of the documents does not address the Court's analysis of why a stay is necessary under *Younger*. Furthermore, Plaintiff cites no authority to support his argument that discovery is allowed during a *Younger* abstention. Thus, the Court DENIES Plaintiff's request to proceed with discovery during the stay.[5]

### IV    CONCLUSION

Having reviewed the Report and Recommendation (Dkt. No. 67), Plaintiff's objections (Dkt. No. 68), Defendants' response (Dkt. No. 69), and the remaining record, the Court finds and ORDERS:

(1)    The Court ADOPTS in part and DENIES in part the Report and Recommendation.

---

[5] On December 31, 2025, Plaintiff filed a request to strike Defendants' response to objections and corresponding declaration. (Dkt. No. 71.) Because neither the declaration (Dkt. No. 70) nor the portion of the response relating to Plaintiff's previous discovery responses (Dkt. No. 69 at 3–5) were relevant to the Court's analysis, the Court DENIES Plaintiff's request as moot.

ORDER ADOPTING IN PART AND DENYING IN PART THE REPORT AND RECOMMENDATION (DKT. NO. 67) - 14

(2)     Defendants' Motion to Dismiss (Dkt. No. 49) is GRANTED IN PART and DENIED IN PART.

(3)     Plaintiff's § 1983 First Amendment claim, Fourth Amendment excessive force claim, including his *Monell* claim, and state tort claims for damages are STAYED under *Younger* pending resolution of his related state criminal cases.

(4)     Plaintiff's civil conspiracy claims are DISMISSED without prejudice and without leave to amend until the stay is lifted.

(5)     Plaintiff's requests for declaratory and injunctive relief are STRICKEN from the first amended complaint.

(6)     Plaintiff is ORDERED to file a status report within **thirty (30) days** of the completion of all related state criminal proceedings.

(7)     Plaintiff's request for sanctions is DENIED.

(8)     The Clerk is directed to send copies of this Order to the parties and to Judge Vaughan.

Dated this 6th day of April, 2026.



David G. Estudillo
United States District Judge

ORDER ADOPTING IN PART AND DENYING IN PART THE REPORT AND RECOMMENDATION (DKT. NO. 67) - 15